LARITA MADDEN, Adm'r of the Estate of James C. Clark, Deceased, Plaintiff-Appellant, *v.* MARGUERITE I. KUEHN, Ex'r of the Estate of Edward A. Kuehn, Deceased, *et al.*, Defendants-Appellees.

Second District   No. 76-381

Opinion filed February 9, 1978.

Nettles, Mahoney & Mahoney, of Freeport, for appellant.

William J. Scott, Attorney General, of Chicago, Bert P. Snow and John B. Whiton, both of Freeport, and Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford (Patricia Rosen, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

James C. Clark died on July 26, 1973, while an inmate of the Illinois State Correctional facility at Vandalia. An action for wrongful death was subsequently filed by Larita Madden, as administrator of the estate of James C. Clark. The liability of the estate of Dr. Edward A. Kuehn, Allyn Sielaff, Director of the Department of Corrections, and the State of Illinois, was predicated on the alleged negligence of Dr. Kuehn, who examined Clark while he was in the penitentiary, but allegedly failed to properly diagnose and treat Clark's "familial periodic paralysis," a

hereditary disease which creates a severe potassium deficiency. The county of Stephenson and Donald Scofield, sheriff of Stephenson County, were claimed to be liable on the ground that the sheriff's office knew of Clark's condition, but negligently failed to inform the Department of Corrections of the condition, or of Clark's continuing need for treatment. The complaint alleged that Clark's death was a direct and proximate result of these acts of negligence.

Motions to strike and dismiss the complaint were made by each of the defendants. The State of Illinois, Allyn Sielaff, Director of the Department of Corrections, and Marguerite I. Kuehn based their motion on the ground that the State and its officials are immune from suits. Stephenson County and Donald Scofield made a motion for judgment on the pleadings or, in the alternative, for summary judgment, arguing that it was apparent from the face of the complaint that the Department of Corrections had been fully advised of the medical problems of James C. Clark during a prior incarceration in 1970, and by Clark himself during his incarceration in 1973. The trial court granted these motions and Larita Madden appeals, contending that (1) the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.1 *et seq.*) is unconstitutional; (2) the trial court erred in considering matters unrelated to the claim against Stephenson County and its sheriff, in passing upon their motion to dismiss, and (3) Dr. Kuehn is not immune from suit either as an "arm" of the State or as a "public official."

■■ The constitutionality of the Court of Claims Act was recently affirmed in *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109 (see also *Williams v. Medical Center Commission* (1975), 60 Ill. 2d 389), and counsel for Larita Madden now concedes that this court has no alternative but to affirm the trial court's dismissal of the complaint as to the State of Illinois and Allyn Sielaff, Director of the Department of Corrections.

■■ ■ Further, we are in entire agreement with the trial court's dismissal of the complaint as to the County of Stephenson and Donald Scofield, its sheriff. The complaint alleged that the Department of Corrections had been negligent, in that its employees "failed to check the records to determine that on a prior incarceration the plaintiff's decedent was the victim of a rare disease known as familial periodic paralysis," and "failed to provide adequate medical care for such disease even though the plaintiff's decedent exhorted them to do so". Attached to the complaint as an exhibit was a letter written by the decedent on July 4, 1973, while in the custody of the Department of Corrections, stating that the decedent had received a medical discharge due to his chronic muscle disease in 1970, after serving time on a prior conviction. The counts which were directed against Stephenson County and its sheriff asserted that the sheriff had been negligent in failing to advise the Department of Corrections that the

"decedent had a life threatening disease which required continuing treatment," and in failing to warn the Department that it should contact one of the physicians who had previously treated the decedent. In passing upon the sufficiency of the complaint, the trial court was required to accept all well-pleaded facts as true and then determine whether the complaint sufficed to state a cause of action (*e.g., Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574), and where, as here, a party has pleaded separate counts against various defendants, but has not pleaded in the alternative, there is no rule which requires the court to consider each count in isolation and ignore facts pleaded in other counts. Even where a party has been negligent, no liability attaches for the commission of a negligent act unless it is proven that the negligent act was the proximate cause of the injury suffered. (*Stauf v. City of Rockford* (1971), 2 Ill. App. 3d 489.) The complaint here clearly averred that the decedent's medical condition was already known to the Department of Corrections when the sheriff turned the decedent over to them, and further, that the decedent himself informed the Department of his condition, prior to his death. It is thus hardly conceivable that the sheriff could be held liable for proximately causing the decedent's death by failing to give the Department of Corrections information which it already had. See *Welch v. Paulson's Enterprises, Inc.* (1969), 118 Ill. App. 2d 183.

■■ The problem presented by the trial court's dismissal of the complaint as to the remaining defendant, Marguerite I. Kuehn, as executor of the estate of Edward A. Kuehn, deceased, is a more difficult one, although the applicable law can be stated with deceptive ease. Employees of the State of Illinois are not exempt from liability for their own acts of negligence, merely because they were acting within the scope of their employment. (*E.g., Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239; *Creamer v. Rude* (1962), 37 Ill. App. 2d 148.) However, there are two rules which have been held to render State officers or employees immune from suit under some circumstances. The first is that, where the suit against the officer or employee is, in fact, an action against the State itself, the action may only be brought in the Court of Claims. (*Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680; *People ex rel. Maciuba v. Cheston* (1974), 25 Ill. App. 3d 224; *Powers v. Telander* (1970), 129 Ill. App. 2d 10.) The second rule is the doctrine of "Public Officials Immunity," which provides that State and other public officials are immune from liability for acts falling within their official discretion. *E.g., Mora v. State* (1977), 68 Ill. 2d 223.

■■ The question of whether the action against the estate of Dr. Kuehn is, in fact, a suit against the State, turns upon "the nature of the employee's alleged conduct and the relief sought." It has been held if the relief sought

" 'could operate to control the action of the State or subject it to liability,' the suit is deemed to be against the State." (*People ex rel. Maciuba v. Cheston* (1974), 25 Ill. App. 3d 224, 226.) A suit nominally against an officer or employee of the State should be regarded as an action against the State "* * * if the State, * * * is the real party against which relief is sought." (*Posinski v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1941), 376 Ill. 346, 351.) In this case, Dr. Kuehn was not asserted to have been acting in an administrative or legislative capacity at the time of his examination and treatment of the decedent. Instead, the duties which he is alleged to have breached are those which every physician owes his patient, rather than obligations incurred solely by virtue of holding a public office. (Compare *Powers v. Telander* (1970), 129 Ill. App. 2d 10; *People ex rel. Maciuba v. Cheston* (1974), 25 Ill. App. 3d 224.) The State cannot be rendered liable by this suit, since the action was not filed in the Court of Claims. The recovery which is sought here is against the assets of Dr. Kuehn's estate or malpractice insurance carrier. The suit against Dr. Kuehn's estate can in no way be said to "control" any action of the State and the State is not the "real party in interest." Under these circumstances, the action against the estate of Doctor Kuehn is not effectively a suit against the State.

■■ ■ Turning to the question of "Public Officials Immunity," the applicability of the doctrine is held to be dependent upon whether the State employee's conduct was "discretionary" or merely "ministerial," with the employee or State official incurring liability only where his actions were not "discretionary." (*E.g., Mora v. State* (1977), 68 Ill. 2d 223, 233; *Bush v. Babb* (1959), 23 Ill. App. 2d 285.) Prosser notes this distinction is "* * * finespun and more or less unworkable." (Prosser, Torts §132, at 988 (4th ed. 1971).) Almost any task, no matter how mundane, even "the driving of a nail," admits of a degree of discretion. In fact, in *Mower v. Williams* (1949), 402 Ill. 486, 492-93, cited by Marguerite I. Kuehn, which involved a negligence action against a State Highway maintenance man, the court went so far as to hold that, since the defendant "was left to his own judgment as to when and where he should perform his duties" and "as to the manner in which he would use the State-owned equipment," he is not liable for injuries incurred by the plaintiff when the defendant drove a State-owned snow plow into an intersection directly in front of plaintiff's automobile. *Mower* was, fortunately, effectively overruled in *Hering v. Hilton* (1958), 12 Ill. 2d 559, and cases holding public officials to have acted within their official discretion have generally involved actions and duties unique to a particular public office. (See, *e.g., Anderberg v. Newman* (1972), 5 Ill. App. 3d 736 (abstract) (involving an administrative decision by State doctors to release plaintiff's decedent's mother from a State mental

institution); *Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, *aff'd* (1966), 35 Ill. 2d 297 (sheriff and warden not personally liable for results of administrative decision to use the "barn boss'" system for policing the county jail); *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485 (EPA director and deputy director held to have acted within their official discretion in incurring litigation costs for proceedings brought by EPA before the Pollution Control Board); *Mora v. State* (1977), 68 Ill. 2d 223 (determination by State Highway official regarding establishment of a "no passing" zone held to be within official discretion).) When these cases are contrasted with such cases as *Pree v. Hymbaugh* (1959), 23 Ill. App. 2d 211, wherein a township highway commissioner was held personally liable for injuries occasioned by his negligent operation of a township truck, the real basis for the distinction between "discretionary" and "ministerial" acts becomes apparent. The underlying public policy that public officials ought to be free to exercise their judgment based upon "[their] best perception of public needs" (*Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, 147), does not apply when the action of the public official does not involve a "governmental" decision. Thus, an act is held to be "discretionary" not merely because it involves the exercise of judgment and skill (for undoubtedly even the operation of a motor vehicle requires this), but because the act is essentially "governmental in character." (See *Mora v. State* (1977), 68 Ill. 2d 223, 233, quoting *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 244.) In the case before us, Dr. Kuehn's actions as set forth in the complaint were not governmental in character and were, therefore, not "discretionary." There is nothing unduly burdensome in holding that physicians employed by the Department of Corrections owe inmates whom they treat the same duty of care which they owe their patients in private practice. (*Cf. Dezort v. Village of Hinsdale* (1976), 35 Ill. App. 3d 703 (suggestion that law officers owe no general duty of care to those who have been arrested and incarcerated held contrary to sound public policy).) We therefore hold that Dr. Kuehn was not immune from suit merely because he was in the employ of the State.

■■ Marguerite I. Kuehn has contended that there was no physician-patient relationship between Dr. Kuehn and the decedent. A reading of the complaint herein convinces us that it alleges facts sufficient to support a finding of a physician-patient relationship. See 61 Am. Jur. 2d *Physicians, Surgeons, etc.* §96 (1972).

For the foregoing reasons, the trial court's order of October 17, 1975, striking the complaint as to the State of Illinois and Allyn Sielaff, Director of the Department of Corrections, is affirmed. The trial court's order of November 10, 1975, dismissing the complaint as to Donald Scofield and the County of Stephenson, is also affirmed. The trial court's order of

November 10, 1975, striking the complaint as to Marguerite I. Kuehn, executor of the estate of Edward A. Kuehn, deceased, is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.

NASH and WOODWARD, JJ., concur.